James J. FLOOD, and Joan L. Flood, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. A92–046–CIVIL.

United States District Court, D. Alaska.

March 12, 1993.

Heather Grahame, Robert Bundy, Bogle Gates, Anchorage, AK, for plaintiffs.

Robert Branman, Asst. U.S. Atty., Anchorage, AK, for defendant.

## ORDER

SEDWICK, District Judge.

Plaintiffs James J. Flood and Joan L. Flood bring this action to recover a tax refund of $94,966 plus interest for the 1988 tax year. The parties have submitted the sole issue in this case, whether the Floods may carry forward investment interest deductions in excess of their taxable income under 26 U.S.C. (IRC) § 163(d), for summary judgment based on stipulated facts.[1]

### I. FACTS

Plaintiffs carried forward excess investment interest from tax years 1983–1986, totaling $1,252,968. Stipulation of Facts (Docket No. 12), at ¶ 6. In 1987, plaintiffs' net investment income, $932,447, exceeded their investment interest paid in that tax year, $34,369. *Id.* at ¶ 5. Plaintiffs applied the investment interest paid in 1987, plus $898,078 from the carried over investment interest to reduce their investment income to zero. The next year plaintiffs' net investment income again exceeded their investment interest. Plaintiffs now seek to use the remainder of their investment interest deduction that they have carried forward to reduce their net investment income for 1988.

Defendants argue that the Floods' taxable income for the years 1983–86 placed a ceiling upon the "disallowed investment interest"

that they could "bank" and carry forward pursuant to IRC § 163(d)(2). Under defendant's theory, the Floods' were able to carry forward $493,786 in investment income. Memorandum in Support of United States Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment (Defendant's Memorandum) (Docket No. 13), at 5. Application of defendant's theory means the Floods' net investment income for 1987 consumed the entirety of their investment interest carryforward, thereby limiting their investment interest deductions for 1988 to those monies expended as such within that tax year.

### II. DISCUSSION

▮▮▮ The issue presented in this case is straightforward: may a taxpayer carry forward his or her total excess investment interest pursuant to IRC § 163(d)(2), or does § 163(d) impliedly limit any available carryforward to the taxpayer's taxable income.[2] The question, therefore, is one of statutory construction. As with any statute, the starting point for interpretation is the statutory language. *Beyer v. Commissioner of Internal Revenue,* 916 F.2d 153, 154 (4th Cir. 1990). If the statutory language answers the question presented, the court need delve into its legislative history only to assure itself that its reading of the statute does not contradict the clear intent of Congress. *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

---

1. Plaintiffs have requested oral argument on their Motion for Summary Judgment. (Docket No. 10). Because the court finds that oral argument would not be helpful in this matter, the motion is denied.

2. The version of § 163 of the Tax Code in effect from 1983 through 1986 provided, in pertinent part:

    (a) General Rule—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

    *     *     *     *     *     *

    (d) Limitation On Interest On Investment Indebtedness—

    (1) In General—In the case of a taxpayer other than a corporation, the amount of investment interest (as defined in paragraph (3)(D)) otherwise allowable as a deduction under this

chapter shall be limited, in the following order, to—

    (A) $10,000 ($5,000, in the case of a separate return by a married individual), plus

    (B) the amount of net investment income. . . .

    (2) Carryover of Disallowed Investment Interest—The amount of disallowed investment interest for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year.

    (3) Definitions—For purposes of this subsection—

    *     *     *     *     *     *

    (E) Disallowed Investment Interest—The term "disallowed investment interest" means with respect to any taxable year, the amount not allowable as a deduction solely by reason of the limitation in paragraph (1).

## A. *Plain Meaning*

■ Section 163(d) is part of a section defining a taxpayer's ability to deduct certain interest payment.[3] Section 163(a) provides generally that taxpayers may deduct interest payments. Section 163(d)(1) expressly limits the investment interest deduction that plaintiffs may take within a tax year to a fixed amount plus net investment income. Section 163(d)(2) permits a taxpayer to carry forward the amount of disallowed investment interest for any taxable year. Disallowed investment interest is that "amount not allowable as a deduction solely by reason of the limitation in paragraph (1)." IRC § 163(d)(3)(E).

Although § 163(d)(1) contains an express limitation on the deduction a taxpayer may use within a tax year, nowhere does § 163(d) expressly limit the investment interest carry-forwards to the taxable income of the taxpayer. Rather, the only express limitation upon a taxpayer's ability to carry forward investment interest expenses is that it be "not allowable as a deduction solely by reason of the limitation in paragraph (1)." IRC § 163(d)(3)(E).[4]

The parties dispute the significance of the term "allowable" as used within § 163(d)(2). The plaintiffs argue that the term must be placed in context with its usage within the rest of the Tax Code, where it traditionally means the total amount of the deduction permitted by law. *Compare* IRC §§ 63, 1016(a)(2) ("requires an adjustment to basis in property for the amount 'allowed' as deductions on a tax return, 'but not less than the amount allowable' whether or not the

allowable amount was claimed on a return."). The plaintiffs contrast "allowable" with "allowed," which they suggest means the actual amount of the deduction taken. *See* I.T. 2944, 14–2 C.B. 126 (1935); *see also Day v. Heckler*, 735 F.2d 779, 784 (4th Cir.1984) ("The distinction between an 'allowable' deduction and an 'allowed' deduction is not insignificant."). Under § 163(a), all the investment interest was allowable, although it would not be allowed if exceeding the limitations imposed by § 163(d)(1). *See Beyer v. C.I.R.*, 916 F.2d 153, 155 (4th Cir.1990).

The government acknowledges that the Tax Code differentiates between the terms "allowed" and "allowable" in other sections. Defendant's Memorandum (Docket No. 13), at 18 (citing IRC § 1016). The government argues that the term "disallowed," as used in IRC § 163(d)(3)(E) in conjunction with the term "allowable" instead of "allowed" is inconsistent, and, therefore precludes importing any significance to the use of that term.

The government's argument has some superficial appeal. However, the term "disallowed", unlike the terms "allowed" and "allowable", is part of the defined term "disallowed investment interest." IRC § 163(d)(3)(E). By statute, disallowed investment interest means, "the amount not allowable as a deduction solely by reason of the limitation in paragraph (1)." *Id.* (emphasis added). Placed within its statutory context, the use of "disallowed" fails to negate Congress' use of the operative term of art. *See Sharp v. United States*, 27 Fed.Cl. 52, 58

---

**3.** The plaintiffs requested and received a refund for 1987 based upon their calculations of investment interest deductions. Therefore, the only tax year at issue is 1988.

**4.** In 1986, Congress again amended the Tax Code, including § 163(d). Congress merged the former § 163(d)(3)(E) into § 163(d)(2), to read: "(2) Carryforward of Disallowed Interest—The amount not allowed as a deduction for any taxable year by reason of paragraph (1) shall be treated as investment interest paid or accrued by the taxpayer in the succeeding taxable year." (emphasis added). The 1986 amendment deleted the restriction that investment interest be not allowable "solely" due to § 163(d)(1).

The parties do not dispute that the plaintiffs stopped accruing excess investment interest after tax year 1986. That is, after 1986, the plaintiffs

had excess investment income that swallowed up the amount of investment interest expenses paid in that year. After tax year 1986, the plaintiffs drew from their banked investment interest reserves. Therefore the changes in the Tax Code affect only the plaintiffs' ability to use their accumulated investment interest expenses, because the plaintiffs stopped banking such expenses prior to the effective date of the 1986 amendments. If anything, the legislative history surrounding the amendment makes clear that a taxpayer may bank the total amount of investment interest in excess of the limitation contained in § 163(d)(1). *See* H.R.Rep. No. 99–426, 99th Cong., 1st Sess. at 296 (1985); H.R.Conf.Rep. No. 99–841, 99th Cong., 2d Sess. at II–153 (1986), U.S.Code Cong. & Admin.News pp. 4075, 4241.

(Ct.Cl.1992). Unless some section of the Tax Code, other than § 163(d)(1), precludes the investment interest expenses any amount over $10,000, plus the investment income earned in that tax year, can be "banked" and carried forward as disallowed investment interest under § 163(d)(2).

The government raises IRC § 172 as a bar to any carryforward of investment interest in excess of taxable income earned within that tax year. Section 172 sets forth a deduction for net operating losses (NOLs) which are defined as the "excess of the deductions allowed by this chapter over the gross income." IRC § 172(c). NOLs may be carried forward or backwards. IRC § 172(b). Section 172(d)(4) limits the use of NOLs: "the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business." The government argues that § 172(d)(4)'s express limitation on non-business NOLs also limits the amount that a taxpayer may carry forward as investment interest under § 163(d)(2).

This argument was recently rejected by the United States Court of Federal Claims:

> Although defendant flatly contends that § 172(d)(4) 'plainly forbids' the carryover of non-business interest under § 163, the court concludes that § 172(d)(4) 'plainly' does not. [footnote omitted]. Sections 163 and 172 deal with entirely different categories of deduction, based on entirely different theories. Investment interest income is not considered income from a trade or business and investment interest debt is not considered a tax or business expense. See § 163(d)(3)(B)(ii). See generally, Cheryl D. Block "The Trouble with Interest" 40 U.Fla.L.Rev. 690, 725 (1988). Thus, logically, it is unclear why there ever should be an overlap between the categories of investment interest deductions that are itemized deductions from taxable income for individual nonbusiness taxpayers, and NOLs, which are deductions from gross income allowed to businesses only.

*Sharp v. United States*, 27 Fed.Cl. 52, 58 (1992).

This court agrees. Section 163 does not refer to, or otherwise incorporate, § 172. Indeed, as recognized by the Court of Federal Claims, the section that the government relies upon, § 172(d)(4), does not even apply to limit the net operating loss carryforward or carryback. IRC § 172(b)(2); *see also Sharp v. United States*, 27 Fed.Cl. at 58. Rather, § 172(d)(4) limits the NOL for the tax year in which it was incurred. *Sharp v. United States*, 27 Fed.Cl. at 58–59. There is nothing to suggest that § 172 limits the amount of disallowed investment interest a taxpayer may carry forward is limited to his or her taxable income.

### B. Legislative History

Until 1969, there were no limitations upon the amount of investment interest expenses that a taxpayer could deduct. In other words, if a taxpayer incurred investment interest expenses in a year that exceeded his investment income, the taxpayer could use the excess to reduce other taxable income. However, any investment interest not deducted within that year was lost forever. Congress enacted § 163(d) in response to this practice. *See* S.R.Rep. No. 91–552, 91st Cong., 1st Sess. at 305 (1969). In adopting the 1969 amendment, Congress specifically referred to the "mismatching of income and the expense of earning that income, so as to be able to insulate other income from taxation." H.R.Rep. No. 91–413, Pt. 1, 91st Cong., 1st Sess. at 72 (1969), *reprinted in* 1969 U.S.C.C.A.N. 1645, 1719.

The 1969 amendment coupled the investment interest deduction to a specific amount, plus the taxpayer's net investment income and long term gain, plus one-half of any interest in excess of these amounts. Additionally, Congress adopted the carryforward provision to allow a taxpayer to indefinitely "bank" investment interest expenses disallowed in prior years solely due to the newly enacted limitation. The House Report accompanying the original bill, H.R. 13270, contained language strongly suggesting that Congress intended to limit any carryforward of excess investment interest to taxable income:

A carryover would not be available, however, for disallowed interest to the extent it exceeded the taxpayer's taxable income for the year (that is, to the extent the disallowed interest would not have reduced the taxpayer's taxable income).

*Id.* at 74.

Faced with the issue which now confronts this court, the Fourth Circuit, in *Beyer v. Commissioner of Internal Revenue,* 916 F.2d 153 (4th Cir.1990), accorded little weight to the House Report containing the passage cited above. The court emphasized the fact that the original House Bill was rejected by the Senate and modified in conference. *Id.* at 156. The compromise amendment, ultimately adopted, changed the definition of the term "disallowed investment interest" from "amount disallowed" to "amount not allowable." *See* H.R.Conf.Rep. No. 91–782, 91st Cong., 1st Sess. at 300 (1969), U.S.Code Cong. & Admin.News 1969, p. 2392. The accompanying Conference Report fails to mention any limitation based upon the taxpayers' taxable income.

The government contends that the House Report is dispositive on Congress' intent to limit the investment interest deduction to taxable income. The government insists that the Senate did not "reject" the House provision for which the above House Report is cited. Rather, the government indicates that the Senate merely "deleted" the provision. Defendant's Memorandum (Docket 13) at 27. Whatever verb is used to describe the Senate's action, the result is the same: the conference report did not contain the language suggesting a taxable income limitation on the carryforward of investment interest. At best, the legislative history generated during the enactment of the pertinent statutory language is inconclusive.

The government directs the court's attention to similar passages contained within the General Explanation of the Tax Reform Act of 1969 (1970) (the "Blue Book"), and in the House Report for the 1976 amendment to the Tax Code, H.R.Rep. No. 94–658, 94th Cong., 1st Sess. at 104 (1975). Courts have questioned the authority of the Blue Book, prepared a year and a half after Congress adopted the 1969 amendment. *See Sharp v. United States,* 27 Fed.Cl. at 59; *Estate of Wallace v. Commissioner of Internal Revenue,* 965 F.2d 1038, 1050 n. 15 (11th Cir.1992); *but see Federal Power Commission v. Memphis Light Gas & Water Division,* 411 U.S. 458, 471–72, 93 S.Ct. 1723, 1730–31, 36 L.Ed.2d 426 (1973) (describing Blue Book as a "compelling contemporary indication" of congressional intent). The House Report to the bill that became the 1976 amendment to the Tax Code also contains such a statement, though modified to include a reference to net operating losses under § 172.[5] Such post-enactment statements, while relevant, are not sufficient to contravene the plain language of a statute. *See Sullivan v. Finkelstein,* 496 U.S. 617, 631, 110 S.Ct. 2658, 2667, 110 L.Ed.2d 563 (1990) (Scalia, J., concurring).

### III. CONCLUSION

In sum, § 163(d) is unambiguous in regard to the amount of investment interest a taxpayer may "bank." The plain language of the statute permits a taxpayer to reserve indefinitely any excess investment interest beyond the limitation imposed by § 163(d)(1) that would otherwise have been allowable. Moreover, nothing in the 1969 amendment to the Tax Code, its legislative history, or the evils it was enacted to combat requires that a taxpayer may only carry forward investment interest equal to investment income.

Plaintiffs do not seek to apply their accumulated investment interest deductions against non-investment taxable income as was allowed prior to 1969. Rather, they have stored up their excess investment interest deductions for the proverbial rainy day. That day having come, their investments having matured to the point where they have yielded substantial investment income, plain-

---

5. The House Report provides:

A carryover is not available for disallowed interest to the extent it exceeds the taxpayer's taxable income for the year the interest is paid or accrued (that is, to the extent the disallowed interest would not have reduced the tax payer's taxable income or increased a net operating loss).

H.R.Rep. No. 94–658, 94th Cong., 1st Sess. at 104 (1975).

tiffs are entitled to deduct the previously disallowed investment interest expenses against the income those investments generated in 1988.

IT IS THEREFORE ORDERED THAT:

Plaintiffs James J. Flood and Joan L. Flood's Motion for Summary Judgment (Docket No. 11) is **GRANTED.** Defendant's Cross Motion for Summary Judgment (Docket No. 13) is **DENIED.**