# United States Tax Court

T.C. Memo. 2024-99

SURK, LLC, SYRKADIAN VENTURES, LLC, A PARTNER OTHER
THAN THE TAX MATTERS PARTNER,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 634-22.                              Filed October 29, 2024.

————

*Steven Ray Mather* and *Gerald J. Schnaus*, for petitioner.

*Michelle A. Monroy*, *Kevin W. Coy*, *Sarah C. Nadel*, and *Hans Famularo*, for respondent.

## MEMORANDUM OPINION

GOEKE, *Judge*: Surk, LLC (Surk), a partnership for federal tax purposes under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, improperly deducted passthrough losses from a lower tier TEFRA partnership, Outerknown, LLC (Outerknown), for 2014 and 2015 that were in excess of its outside basis in Outerknown (excess losses) in violation of the loss limitation rule of section 704(d).[1] Both years are closed to assessment. *See* § 6229. Respondent did not disallow the excess loss deductions, and he does not seek to do so now. Rather, he issued a Notice of Final Partnership Administrative Adjustment (FPAA) for 2017

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded.

[*2] that determined that Surk must decrease its outside basis in Outerknown for 2017 to account for the excess losses. In the FPAA, after accounting for the excess losses, respondent disallowed part of Surk's passthrough loss deduction from Outerknown for 2017 on the basis of the section 704(d) loss limitation rule.

During the course of this proceeding, the parties agreed that Surk was entitled to increase its outside basis in Outerknown in 2017 to account for a cash distribution that Surk made in 2016 but previously failed to account for. As a result, Surk had sufficient outside basis to deduct the entire 2017 Outerknown loss.[2] Accordingly, respondent concedes that Surk is entitled to the loss deduction that he disallowed in the FPAA. However, respondent continues to assert that Surk must decrease its 2017 yearend outside basis by the excess losses as he determined in the FPAA. We hold that Surk must do so.

*Background*

The parties submitted this case fully stipulated without trial pursuant to Rule 122. The following facts are based on the pleadings and the parties' stipulations including attached exhibits. When the Petition was timely filed, Surk had a mailing address and principal place of business in California.

From 2014 to 2017 Surk owned a majority interest in Outerknown. Surk deducted the excess losses on its 2014 and 2015 returns. For 2014 it deducted an Outerknown loss of $1,123,680, but its outside basis was $544,042. Thus, it improperly deducted an excess loss of $579,638. *See* § 704(d). For 2015 it deducted an Outerknown loss of $2,729,129, but its outside basis was zero. Accordingly, the entire deduction was an excess loss. Respondent did not disallow any part of the 2014 or 2015 excess loss deduction or issue an FPAA for either year. The total excess losses were $3,308,767.

For 2016 Surk's Outerknown loss was $3,001,009. During 2016 Surk made a cash distribution that increased its basis in its capital assets including a $3,812,500 increase in its outside basis in Outerknown.[3] *See* § 743. When it prepared its 2016 return, Surk did not

---

[2] For simplicity, we refer to Surk's distributive share of loss from Outerknown as an Outerknown loss.

[3] Surk made a section 754 election for 2016. The parties stipulated the amount of the outside basis increase from the cash distribution.

**[*3]** increase its outside basis to account for the cash distribution. It calculated that its outside basis was $1,730, deducted only $1,730 of its Outerknown loss, and carried forward $2,999,279 of the loss pursuant to section 704(d) (2016 carryforward loss). According to Surk's reporting, the $1,730 loss deduction decreased its outside basis to zero for yearend 2016.

For 2017 Surk's Outerknown loss was $4,963,892. For purposes of preparing its 2017 return, Surk calculated that its outside basis in Outerknown was $5,304,992. It deducted the entire 2017 loss plus $341,100 of the 2016 carryforward loss for a total loss of $5,304,992. Its remaining 2016 carryforward loss at yearend 2017 was $2,658,179. The record does not reflect whether Surk has deducted any part of the carryforward loss for any year after 2017.

In the FPAA respondent determined that Surk must decrease its 2017 outside basis by the excess losses and disallowed part of Surk's loss deduction for 2017 on the basis that Surk had insufficient outside basis in Outerknown pursuant to the section 704(d) loss limitation rule.[4] After accounting for the basis adjustment from the 2016 cash distribution, respondent concedes that Surk is entitled to the entire loss deduction that it claimed for 2017. However, he maintains that Surk must decrease its yearend 2017 outside basis in Outerknown by the excess losses. He calculates that Surk's outside basis at yearend 2017 was $535,048.

After the parties submitted this case fully stipulated and filed opening briefs, petitioner, Syrkadian Ventures, LLC, moved for entry of decision in Surk's favor under Rule 248(b) on the basis that respondent has conceded all the adjustments in the FPAA. It also argued respondent's method of computing Surk's yearend 2017 outside basis in Outerknown is a new matter under Rule 142 that is not properly at issue in this case.

---

[4] In the FPAA respondent also determined positive adjustments to Surk's outside basis for 2016 and 2017 of $177,445 and $33,961, respectively, that offset some negative adjustment from the excess losses. He disallowed $3,097,361 of the 2017 loss deduction calculated as follows: the $3,308,767 excess losses less the $177,445 and $33,961 positive adjustments. The parties have stipulated adjustments to Surk's outside basis for 2014–17 except for the negative basis adjustment for the excess losses.

**[\*4]**                                    *Discussion*

Section 6226(f) grants jurisdiction to the Court "to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates." Once the Court acquires jurisdiction, its jurisdiction extends to all partnership items for the taxable year. *See Wilmington Partners L.P. v. Commissioner*, T.C. Memo. 2009-193, 2009 WL 2612305, at \*3–5, *aff'd in relevant part and remanded per summary order*, 495 F. App'x 173 (2d Cir. 2012). The Court's jurisdiction is not limited to partnership items reported on a return. *Id.* Nor is it required that the FPAA adjust an item reported on the partnership's return for the Court to have jurisdiction. *See Harbor Cove Marina Partners P'ship v. Commissioner*, 123 T.C. 64, 78 (2004); *see also Domulewicz v. Commissioner*, 129 T.C. 11, 20 (2007) (stating that there is no requirement that a determination actually result in a change), *aff'd in part, remanded in part sub nom. Desmet v. Commissioner*, 581 F.3d 297 (6th Cir. 2009).

Our caselaw establishes that the Court has jurisdiction to resolve all partnership items even though resolution does not result in a readjustment to the partnership return. *Harbor Cove*, 123 T.C. at 78. We see no reason to distinguish this case where respondent has conceded the loss disallowed in the FPAA but a partnership item adjusted in the FPAA remains at issue. Thus, it is immaterial that respondent has conceded the loss disallowance in the FPAA. We retain jurisdiction so long as an adjustment to a partnership item remains at issue. Outside basis is determined at the partner level. *See United States v. Woods*, 571 U.S. 31, 41 (2013) (stating that outside basis is an affected item that is adjusted at the partner level). Thus, it is proper to determine Surk's outside basis in Outerknown, a lower tier partnership, in this case. Respondent recomputed Surk's 2017 outside basis in the FPAA. Accordingly, we have jurisdiction to determine how Surk must calculate its outside basis in Outerknown, and we do so in this case.

Petitioner argues that we should not consider the method that respondent used to calculate outside basis in his opening brief because it is a new issue. Respondent raised the proper calculation of Surk's outside basis in the FPAA. He specifically asserted that "Surk's losses in the 2014 and 2015 closed taxable years must be taken into account for computing basis for the 2017 tax year." The parties have raised the outside basis issue throughout this case. Petitioner itself raised it in the Petition and a summary judgment motion. It is the exact issue presented for decision when the parties agreed to submit this case fully stipulated.

**[\*5]** Petitioner argues that respondent's outside basis adjustment is a new determination. Respondent changed his reading of the statute and regulations from the one stated in the FPAA and in his previous filings with this Court. However, such a change does not render the basis computation a new matter. The proper interpretation of a statute or regulations is not a new matter. It is the Court's job to interpret the law irrespective of how respondent did so in the FPAA or how the parties do so in their briefs. Moreover, petitioner had an opportunity to respond to respondent's argument in its reply brief. We find that there is no new matter.[5] Accordingly, we will deny petitioner's Motion for Entry of Decision.

Turning to the issue presented for decision, a partner may deduct its distributive share of partnership loss. § 702(a). However, section 704(d) limits a partner's deduction to its outside basis in its partnership interest at the end of the partnership year in which the loss occurred. *See Sennett v. Commissioner*, 80 T.C. 825 (1983), *aff'd per curiam*, 752 F.2d 428 (9th Cir. 1985). Any loss in excess of the partner's outside basis is carried forward and allowed as a deduction for the partnership year in which such excess is repaid to the partnership. § 704(d); *see* Treas. Reg. § 1.704-1(d)(1). In other words, the partner may carry forward the loss until it has sufficient outside basis to deduct it.

Initially, a partner's outside basis equals its monetary contributions to the partnership plus its adjusted basis in any other property that it contributes. § 722. Section 705(a) provides the general rules for calculating outside basis thereafter. It requires that partners calculate their outside bases on an annual basis to account for the partnership's activities during the year, such as additional contributions to the partnership, distributions from the partnership, liabilities incurred, income, loss, and expenses. *See* §§ 705(a), 752(a). When calculating their bases each year, section 705(a) provides that partners account for their annual distributive shares of partnership income and/or loss since the partnership began. *See Robertson v. Commissioner*, T.C. Memo. 2009-91; *Chong v. Commissioner*, T.C. Memo. 2007-12. Specifically, section 705(a) provides that a partner's outside basis increases by the sum of its distributive share of taxable income "for the taxable year and prior taxable years" and decreases by the sum of its distributive share of partnership loss "for the taxable year and prior

---

[5] Even if it were a new matter, it is the Court's practice to consider new matters that do not prejudice the nonasserting party, but we would shift the burden of proof to the Commissioner, which is irrelevant in this fully stipulated case. *See* Rule 142(a)(1).

[*6] taxable years." § 705(a)(1) and (2). Thus, the plain wording of the statute requires that a partner decrease its outside basis by the sum of all current and prior losses. However, in their annual calculation partners cannot reduce their outside bases below zero. § 705(a)(2).

The plain wording of section 705(a) requires Surk to decrease its outside basis by the excess losses. Respondent's calculation is consistent with section 705(a). The one caveat is that outside basis cannot be reduced below zero. However, respondent is not recalculating Surk's outside basis for 2014 or 2015 and improperly reducing it below zero. Rather, he is calculating Surk's 2017 yearend basis to account for current-year and prior-year losses. Surk reduced its outside basis below zero when it claimed the excess loss deductions for 2014 and 2015.

A partner is required to calculate its outside basis only when necessary to determine its tax liability. Treas. Reg. § 1.705-1(a)(1). The calculation of outside basis is ordinarily made at the end of a partnership year. *Id.* The section 704(d) loss limitation rule is one example of when it is necessary to calculate outside basis. The regulations under section 704(d) rely on the basis calculation rules of section 705. However, they provide specific rules for computing outside basis for purposes of section 704(d). The section 704(d) rules differ from section 705(a) as they distinguish between allowed or disallowed losses. Section 705(a) does not make such a distinction. Under section 705, all prior-year and current-year losses (both allowed and disallowed) decrease outside basis but not below zero. For purposes of section 704(d), outside basis is decreased only for prior-year losses that were allowed. Treas. Reg. § 1.704-1(d).

Treasury Regulation § 1.704-1(d)(2) provides an ordering rule, first to make positive basis adjustments under section 705(a)(1) and then negative adjustments under section 705(a)(2) "except for losses of the taxable year and losses previously disallowed." From this first step of the calculation, a partner determines the amount of its outside basis that is available to deduct current-year loss. If the partner's outside basis is less than its distributive share of current-year loss, the partner may deduct the current-year loss equal to its outside basis and must carry forward the excess loss to future years when it has sufficient outside basis to deduct it. Treas. Reg. § 1.704-1(d)(2). Conversely, if the partner's outside basis exceeds its distributive share of current-year loss, the partner may deduct the current-year loss plus prior-year disallowed losses, i.e., carryforward losses, to the extent of its remaining outside basis. *Id.*

**[\*7]** We interpret the regulation's exclusion of "losses previously disallowed" to mean that a partner must decrease its outside basis by all previously allowed losses in the first step of the calculation. We have defined an "allowed deduction" as a deduction actually claimed on a return and allowed by the Internal Revenue Service (IRS), which we have distinguished from an "allowable deduction," i.e., a deduction which qualifies under a specific provision of the Code. *See Lenz v. Commissioner*, 101 T.C. 260, 265 (1993); *Reinhardt v. Commissioner*, 85 T.C. 511, 515–16 n.6 (1985); *see also Flood v. United States*, 33 F.3d 1174, 1177 (9th Cir. 1994). On its 2014 and 2015 returns Surk deducted over $3.3 million of excess losses. The IRS did not disallow the deductions, and those years are closed. In such an instance, the returns provide the final tax treatment, and Surk is bound by the reporting on the returns. *See Meruelo v. Commissioner*, 132 T.C. 355, 365 n.7 (2009), *aff'd*, 691 F.3d 1108 (9th Cir. 2012); *Roberts v. Commissioner*, 94 T.C. 853, 857 (1990); *see also Harris v. Commissioner*, 99 T.C. 121, 124–25 (1992), *supplementing* T.C. Memo. 1990-80. Accordingly, the 2014 and 2015 excess losses are previously allowed losses, and Surk must decrease its outside basis by the excess losses for its annual calculation of outside basis for purposes of section 704(d). This is the proper outside basis calculation for 2017 and for future years.

Notwithstanding the computation rules above, petitioner argues that respondent cannot use an FPAA for 2017 to adjust Surk's outside basis to account for the 2014 and 2015 excess losses. It argues that respondent's only recourse was to issue an FPAA for 2014 and 2015 to disallow the excess loss deductions. We disagree. As stated above, under section 705(a) a partner must calculate outside basis annually and must decrease its outside basis for the current-year loss as well as all prior-year losses since the partnership began. Treasury Regulation § 1.704-1(d)(2) adopts the section 705 basis adjustment rules although it limits the negative basis adjustment to allowed losses. Thus, it is immaterial that respondent did not issue an FPAA for 2014 and 2015 or that those years are closed. Respondent is calculating Surk's outside basis for yearend 2017. For this same reason, we also reject petitioner's argument that respondent's position decreases Surk's outside basis below zero. Respondent's calculation of Surk's 2017 yearend outside basis does not result in an outside basis below zero.

Moreover, respondent is not seeking to make an assessment for a closed year or to disallow the excess loss deductions for 2014 and 2015. The question before the Court is how the excess loss deductions factor into the annual outside basis calculation. Events from nondocketed,

**[\*8]** prior, closed years may be considered to calculate outside basis for the docketed year. *See G-5 Inv. P'ship v. Commissioner*, 128 T.C. 186, 191–92 (2007); *see also* § 6214(b) (for deficiency cases).

Petitioner concedes that Surk improperly deducted the excess losses for 2014 and 2015. Surk now seeks to disregard its own reporting to claim future tax benefits. If Surk were not required to decrease its outside basis by the previously allowed excess losses, its outside basis would be overstated and would permit loss deductions in excess of Surk's investment in its Outerknown partnership interest. We hold that for purposes of section 704(d) Surk must decrease its outside basis in Outerknown by all previously allowed losses including the $3,308,767 of excess losses that it deducted for 2014 and 2015.

The parties have stipulated the amounts of the annual adjustments to Surk's outside basis for all years since its inception apart from the excess losses. Adjusting for the excess losses, respondent calculated that Surk had an outside basis in Outerknown of $535,048 at yearend 2017. Petitioner has not provided an alternative calculation. We direct the parties to compute Surk's 2017 yearend outside basis in a Rule 155 computation in accordance with the stipulation of facts and this Opinion.[6]

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[6] Respondent's calculation would have allowed Surk to deduct an additional carryforward loss in that amount for 2017. However, petitioner has not asserted an increased deduction in this case, and there is no evidence in the record to support such a deduction.